[Cite as *Rolph v. Rolph*, 2026-Ohio-3005.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


| | | |
|---|---|---|
| MARTIN ROLPH, et al., | : | |
| Appellees, | : | CASE NO. CA2025-08-013 |
| vs. | : | OPINION AND JUDGMENT ENTRY 8/4/2026 |
| DANIEL ROLPH, et al., | : | |
| Appellants. | : | |
| | : | |


CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2023-0418


Cors & Bassett, LLC, and Kevin R. Feazell; and Patrick J. Gregory and David E. Grimes, for appellees.

Yonas & Phillabaum, LLC, and Jason Phillabaum, James Boyd, and Hope Platzbecker, for appellants.


## O P I N I O N


**BYRNE, P.J.**

{¶ 1} Plaintiffs-Appellants, Martin Rolph, James Rolph, Julie Robke, and Luke Rolph (collectively, "Plaintiffs"), appeal from the decision of the Brown County Court of Common Pleas, General Division, which granted summary judgment on all claims in

favor of Defendants-Appellees, Daniel and Christina Rolph (collectively, "Defendants"). For the reasons described below, we affirm.

## I. Factual and Procedural Background

### A. Background Facts

{¶ 2} This matter involves the Estate of Judy Martin Gray and an inter vivos transfer of her real property. The following facts, unless noted, are not in dispute.

{¶ 3} Gray passed away on April 22, 2022. Four of Gray's five children survived her: Plaintiffs Martin, James, and Julie, and Defendant Daniel. Gray's son, Christopher, predeceased her. Christopher had two children, Plaintiff Luke and non-party Grant.

{¶ 4} Gray executed her last will and testament in August 2021. In the will, Gray divided her beneficial estate into five equal shares. Her four surviving children would each receive a one-fifth share. The remaining one-fifth share would be split between Christopher's sons, Plaintiff Luke and non-party Grant.

{¶ 5} At the heart of this dispute is the family farm ("the Farm"), which was an approximate 300-acre farm located at 7618 State Route 505, Felicity, Brown County, Ohio. Gray and her late husband raised their children on the Farm.

{¶ 6} Beginning in or around 2005, Defendant Daniel moved back to the Farm and began working there as a self-employed farmer. He lived in a home on the property next door to Gray. The record is not clear, but it appears that Defendants Daniel and Christina lived together as husband and wife while living at the Farm.

{¶ 7} In 2014, eight years prior to her death, Gray entered into a land contract ("Land Contract") with Defendants Daniel and Christina, allowing them to purchase the Farm. The Land Contract specified a purchase price of $600,000, payable by 10 annual payments of approximately $27,000 per year, with interest accruing at 2% per annum.

Defendants further agreed to pay the outstanding balance in the 11th year, and agreed to obtain financing or other sources of funds to make this final payment.

{¶ 8}   At the time Gray entered into the Land Contract, she allegedly wrote a letter to her other children informing them that she had decided to sell the Farm to the Defendants, which would allow them to continue farming and keep the Farm in the family for at least another generation.[1] She also stated that the money from this sale would "go into my trust" and what was left would be divided "between the five of you." There is no evidence that Gray created a trust for the benefit of her children or deposited money received from the Land Contract into a trust.

{¶ 9}   Beginning in 2015, Defendants began making the annual payments on the Land Contract and paid $27,000 each year until 2020, making a total of six payments totaling $162,000 in principal and interest.

{¶ 10}  In August 2020, Gray transferred the Farm by general warranty deed to the Defendants. The deed reflected that it released the Land Contract, and referenced the Land Contract by recorded book and page number. On the same day, Gray transferred her own house by general warranty deed to Plaintiff Julie. At her deposition, Plaintiff Julie testified that she drove Gray to the law office of Gray's attorney, Michael Pfeffer, where the deeds for these two transfers were prepared and executed.

{¶ 11}  Gray's last will and testament nominated Michael Pfeffer as Executor of her estate. The will further identified Defendants as alternate co-executors. After Gray's passing, Pfeffer was unable to serve as executor. Defendants thereafter opened Gray's Estate in the Brown County Court of Common Pleas, Probate Division.

---

1. The letter is in evidence, but some Plaintiffs dispute whether Gray wrote the letter.

**B. The Probate Division Matter**

{¶ 12} After the Estate was opened and the inventory filed, Plaintiff Martin filed a motion with the probate court to disqualify the Defendants as co-executors, pursuant to R.C. 2113.18. That statute allows a probate court to remove an executor if there are "unsettled claims" between the executor and the estate that the court believes may be the subject of controversy or litigation. Plaintiff Martin alleged that there was approximately $600,000 missing from the estate inventory because Defendants had failed to pay the Land Contract in full. Martin asked the probate court to appoint him estate administrator.

{¶ 13} A magistrate with the probate court held an evidentiary hearing on the motion to disqualify and testimony and evidence was offered. At the conclusion of the hearing, the magistrate orally announced that the transfer of the Farm to the Defendants by deed was a valid transfer. In a subsequent written decision, the magistrate found that the terms of the Land Contract merged with the deed executed in August 2020. The magistrate noted that no exceptions were filed to the inventory, which did not list the Farm as an estate asset. The magistrate overruled the motion to remove the co-executors.

{¶ 14} Plaintiff Martin objected to the magistrate's decision. Martin objected on the basis that (1) removal of the co-executors was required due to the high likelihood of litigation between heirs and co-executors, (2) the magistrate erred by refusing to permit evidence regarding the transfer of the Farm, and (3) the magistrate erred by not taking into account that the vested beneficiaries of Gray's will (other than Defendant Daniel) supported removing Defendants.

{¶ 15} The probate court judge overruled the objections. Like the magistrate, the judge found that the payment terms of the Land Contract merged with the August 2020 transfer by deed. The judge also found no basis to remove the co-executors based on a

"high" probability of litigation. The judge noted that the Land Contract was not listed on the estate inventory and no party had filed exceptions to the inventory. The court found that "unknown litigation" did not require removing the Defendants as co-executors.

{¶ 16} Lastly, the judge found that the magistrate did not err in refusing to permit evidence related to Gray's mental condition at the time of the execution of the August 2020 deeds. The judge found that no medical testimony had been submitted and Plaintiff Julie, who was present for the execution of the deed, "allowed it to happen" and benefitted from the transfer of Gray's home that day. The court questioned why Plaintiff Julie would now question the legitimacy of a transfer in which she was an active participant.

{¶ 17} Plaintiff Martin did not appeal the probate court's decision.

### C. The General Division Matter

### 1. Plaintiffs' Complaint, Defendants' Answer, and Discovery

{¶ 18} Approximately six months later, in July 2023, Plaintiffs filed a complaint in the Brown County Court of Common Pleas, General Division, against Defendants Daniel and Christina, both in their individual capacities and as co-executors of Gray's Estate. In the complaint, Plaintiffs asserted five counts: (1) intentional interference with the expectancy of an inheritance ("IIEI"), (2) fraud, (3) undue influence, (4) unjust enrichment, and (5) quiet title. Only three of those claims have been raised as issues in this appeal: IIEI, fraud, and undue influence.

{¶ 19} With respect to the IIEI claim, Plaintiffs asserted that Defendants committed fraud, duress, and/or undue influence to intentionally interfere with their expectation of an inheritance.

{¶ 20} With respect to the fraud claim, Plaintiffs asserted that the Defendants made "false statements" to Gray in order to induce her to convey the Farm to them before the

Land Contract had been fulfilled. The complaint did not state what false statements were made by the Defendants.

{¶ 21} Regarding the undue influence claim, Plaintiffs asserted that Defendants believed or knew that Gray was suffering from diminished capacity and susceptible to their influence and exerted improper influence over her.

{¶ 22} In answering the complaint, Defendants stated the following as their affirmative defenses: (1) "Plaintiffs fail to state a claim upon which relief can be granted"; (2) "Defendants set forth all affirmative defenses listed in Ohio Civil Rule 8(c) until discovery can be completed in this matter"; and (3) "Plaintiffs failed to include all necessary parties."

{¶ 23} The parties thereafter engaged in discovery, including taking depositions of Defendant Daniel and each of the Plaintiffs. Afterward, Defendants moved for summary judgment on all claims.

## 2. Defendants' Motion for Summary Judgment

{¶ 24} In support of summary judgment, Defendants first argued that the complaint was barred by issue preclusion. Defendants argued that the probate court's decision on Plaintiff Martin's motion to disqualify found that the conveyance of the Farm to the Defendants was legally valid. Defendants argued that this determination had a preclusive effect in any subsequent proceedings and all parties to the Estate were bound by that decision. Defendants argued that the complaint was an attempt to relitigate that issue and should be barred.

{¶ 25} Turning to the merits, Defendants argued that Plaintiffs could not meet their burden of proof on any claims due to a lack of evidence. With regard to fraud, Defendants argued that the complaint was defectively vague as to what alleged acts or statements by the Defendants were fraudulent and that each of the Plaintiffs at deposition failed to

identify any false statements made to Gray to induce her to convey the Farm to Defendants.

{¶ 26} With regard to the IIEI and undue influence claims, Defendants again pointed to the depositions of the Plaintiffs, in which some testified that they had no real expectation of an inheritance from Gray, or that they only expected Gray's estate to be divided equally, as was the case in her will. Defendants argued that none of the Plaintiffs could identify any specific conduct by either Defendant towards Gray that could be characterized as fraudulent, causing duress, or undue influence.

{¶ 27} With regard to allegations of diminished capacity, and with respect to the undue influence claim, Defendants argued that Gray was "never actually diagnosed with dementia" and pointed to a neuropsychological test requested by Gray, which only showed "mild cognitive impairment." Defendants pointed to their own expert testimony, which found that given Gray's improving mental state between two neuropsychological exams, she could not have been suffering from dementia, which is a progressive disease.

### 3. Plaintiffs' Opposition to Summary Judgment

{¶ 28} In opposing summary judgment, Plaintiffs argued that Defendants' issue preclusion argument was an attempt to assert the affirmative defense of res judicata, and was waived because it was not raised in the Defendants' answer. Furthermore, Plaintiffs argued that even if Defendants had not waived the assertion of res judicata, issue preclusion was only applicable to facts or points actually determined in a prior proceeding and was limited by the probate court's jurisdiction.

{¶ 29} Plaintiffs argued that the probate court had no jurisdiction over complaints for money damages arising from fraud, and while a declaratory judgment action about the validity of inter vivos transfers can be brought in probate court, no such action was filed in the probate court. Plaintiffs argued that the only issues raised with the probate court

were (1) whether the co-executors should be removed due to potential litigation, and (2) what assets were currently in Gray's estate. On the other hand, Plaintiffs argued that the issues before the general division of the common pleas court were "whether the Family Farm and its value were obtained from Gray by fraud, undue influence, or intentional interference with expectancy of inheritance. . . "

{¶ 30} Addressing the merits, Plaintiffs argued that they submitted summary judgment evidence demonstrating genuine issues of fact for trial on fraud, intentional interference, and undue influence.

### 4. General Division's Decision Granting Summary Judgment

{¶ 31} The court granted summary judgment in favor of Defendants on all claims. First, the court agreed that res judicata applied on "all issues regarding the execution of the Deed to the Defendants" as that issue was previously litigated in and determined by the probate court. The court further found that the affirmative defense of res judicata could be raised for the first time in a motion for summary judgment.

{¶ 32} As to the claims of fraud, undue influence, and IIEI, the court found that the Plaintiffs had failed to plead facts constituting fraud in the complaint. The court noted that not one Plaintiff could articulate any facts supporting these claims at their depositions. The court further observed that the claims required clear and convincing evidence, and the Plaintiffs could not establish a prima facie case for any claims.

{¶ 33} As to the Plaintiffs' claim that Gray suffered from dementia at the time of the deed transfer of the Farm, the court found that the Plaintiffs ignored the findings of Gray's physician, who opined that the results of her neurological testing "would be impossible in someone with dementia."

{¶ 34} The court found no genuine issues of any material fact and granted judgment to Defendants on all claims.

{¶ 35} Plaintiffs have appealed, raising two assignments of error.

## II. Law and Analysis

## A. Res Judicata and Waiver

{¶ 36} Plaintiffs first assignment of error states:

> THE TRIAL COURT ERRED IN DETERMINING THAT PLAINTIFFS' CLAIMS WERE BARRED BY RES JUDICATA.

{¶ 37} Plaintiffs argue that by failing to raise the affirmative defense of res judicata in their answer, Defendants waived the defense of res judicata and therefore the trial court erred in granting summary judgment on all claims regarding the execution of the deed of the Farm to the Defendants on the basis of issue preclusion. We first turn to the applicable standard of review.

## 1. Summary Judgment Standard of Review

{¶ 38} "Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial." *Franchas Holdings, L.L.C. v. Dameron*, 2016-Ohio-878, ¶ 16 (12th Dist.).

{¶ 39} "Civ.R. 56 sets forth the summary judgment standard." *State ex rel. Becker v. Faris*, 2021-Ohio-1127, ¶ 14 (12th Dist.). "Pursuant to that rule, a court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party." *Spitzer v. Frisch's Restaurants, Inc.*, 2021-Ohio-1913, ¶ 6 (12th Dist.). "'An issue is genuine only if the evidence is such that a reasonable jury could find for the non-moving party.'" *Baker v. Bunker Hill Haven Home*, 2024-Ohio-875, ¶ 10 (12th Dist.), quoting *Abbuhl v. Orange Village*, 2003-Ohio-4662, ¶ 14 (8th Dist.). "A material fact is one which

would affect the outcome of the suit under the applicable substantive law." *Hillstreet Fund III, L.P. v. Bloom*, 2010-Ohio-2961, ¶ 9 (12th Dist.).

{¶ 40} "The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact." *Berkheimer v. REKM, L.L.C.*, 2023-Ohio-116, ¶ 18 (12th Dist.). To satisfy this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Adkins v. Middletown*, 2025-Ohio-317, ¶ 60 (12th Dist.). "Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve." *Sullivan v. Mercy Health*, 2022-Ohio-4445, ¶ 21 (12th Dist.). The nonmoving party does this by presenting "'specific facts,'" demonstrating the existence of a genuine triable issue; the nonmoving party "'may not rest on the mere allegations or denials in its pleadings.'" *Oliphant v. AWP, Inc.*, 2020-Ohio-229, ¶ 31 (12th Dist.), quoting *Deutsche Bank Natl. Trust Co. v. Sexton*, 2010-Ohio-4802, ¶ 7 (12th Dist.), citing Civ.R. 56(E). "Summary judgment is proper if the nonmoving party fails to set forth such facts." *Taylor v. Atrium*, 2019-Ohio-447, ¶ 10 (12th Dist.), citing *Puhl v. U.S. Bank, N.A.*, 2015-Ohio-2083, ¶ 13 (12th Dist.). "In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party." *Assured Admin., L.L.C. v. Young*, 2019-Ohio-3953, ¶ 14 (12th Dist.), citing *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

{¶ 41} "This court reviews a trial court's summary judgment decision under a de novo standard." *Faith Lawley, L.L.C. v. McKay*, 2021-Ohio-2156, ¶ 26 (12th Dist.). De novo means that this court uses the same standard that the trial court should have used. *Brock v. Servpro*, 2022-Ohio-158, ¶ 29 (12th Dist.). Therefore, when conducting a de novo

review, this court independently reviews the trial court's decision without giving it any deference. *Baker*, 2024-Ohio-875, at ¶ 9 (12th Dist.).

### 2. Applicable Rules and Law on Waiver of the Affirmative Defense of Res Judicata

{¶ 42} Civ.R. 8(B) states that a defendant "shall," in response to a pleading, "state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." Civ.R. 8(C) addresses pleading affirmative defenses. In relevant part, the rule provides that "In pleading to a preceding pleading, a party *shall* set forth affirmatively . . . res judicata . . ." (Emphasis added.) Defendants' answer did not assert res judicata as an affirmative defense but generally referred to all defenses listed in Civ.R. 8(C). Defendants did not move to supplement their answer with any affirmative reference to res judicata before moving for summary judgment.

{¶ 43} In *State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107 (1991), the Ohio Supreme Court considered an appeal from a decision granting a Civ.R. 12(B)(6) motion to dismiss an action in mandamus on the basis of res judicata. The supreme court first noted that the lower court had considered materials outside the pleadings, and thus treated the motion to dismiss as a motion for summary judgment. *Id.* at 109. However, the supreme court found that those materials were not proper summary judgment evidence, so the lower court should not have treated the motion to dismiss as a summary judgment motion. *Id.* The supreme court then held that the defense of res judicata could not be raised in a Civ.R. 12(B) motion to dismiss because Civ.R. 12(B) enumerates the defenses that may be raised in such a motion but res judicata is not among Civ.R. 12(B)'s listed defenses. *Id.* The supreme court noted that in *Johnson v. Lindner*, 14 Ohio App.3d 412 (3rd Dist.1984), the Third District Court of Appeals stated that the affirmative defense of

res judicata *could* be raised by motion for summary judgment. *Id*. at 109. The *Freeman* court simply stated, "We concur." *Id*.

{¶ 44} Notably, the Ohio Supreme Court in *Freeman* did not specifically address the precise issue in this case, which is whether res judicata is waived if not initially asserted in a responsive pleading. Instead, *Freeman* only held that Civ.R. 12(B) is not the proper vehicle to assert the defense of res judicata.

{¶ 45} Later, in *Jim's Steak House, Inc. v. Cleveland*, 81 Ohio St.3d 18, 1998-Ohio-440, the Ohio Supreme Court held that "Affirmative defenses other [than] those listed in Civ.R. 12(B) *are waived if not raised in the pleadings or in an amendment to the pleadings*." (Emphasis added.) *Id*. at 20, citing Civ.R. 8. This statement in *Jim's* indicates that res judicata is waived if not raised in the pleadings or in an amendment to the pleadings because it is included as an affirmative defense listed in Civ.R. 8(C) but not included as a defense which may be asserted by motion pursuant to Civ.R. 12(B).

{¶ 46} In *Jim's*, the Ohio Supreme Court cited *Freeman*, but only for the assertion that res judicata was not an affirmative defense that could be asserted in a Civ.R. 12(B) motion. *Id*. at 21. Because *Jim's* involved a Civ.R. 12(B)(6) motion to dismiss, the Ohio Supreme Court's decision did not discuss whether res judicata could be raised for the first time in a motion for summary judgment, as potentially implied in *Freeman*.

{¶ 47} In *State ex rel. Anderson v. Wilson*, 2025-Ohio-493, in the context of a filing of a motion to dismiss on grounds of res judicata, the Ohio Supreme Court reaffirmed that the affirmative defense of res judicata is waived if it is not raised in a responsive pleading. *Id*. at ¶ 10, citing *State ex rel. Deiter v. McGuire*, 2008-Ohio-4536, ¶ 28, in turn citing *Jim*'s at ¶ 13-14. In *Anderson*, the court found that respondents had waived res judicata by failing to plead it in their answer.

{¶ 48} Plaintiffs cite *Jim's* and *Anderson* for the proposition that the Defendants' failure to raise res judicata in their answer waived their ability to raise that affirmative defense for the first time in their motion for summary judgment.

{¶ 49} Defendants counter by arguing that neither *Jim's* nor *Anderson* construed waiver of the affirmative defense of res judicata when raised for the first time in a motion for summary judgment. They also argue that neither case overruled *Freeman*, and *Freeman* impliedly approved the statement in *Johnson* that res judicata could be raised in a motion for summary judgment.

{¶ 50} Upon review, we do not find the Defendants' arguments persuasive. *Jim's* and *Anderson* and the plain text of Civ.R. 8(C) support the proposition that the affirmative defense of res judicata is waived if not raised in a responsive pleading. *See* Civ.R. 8(C) ("a party shall set forth affirmatively . . . res judicata.") While *Jim's* and *Anderson* involved attempts to assert the defense of res judicata in the context of a Civ.R. 12(B)(6) motion, the same situation occurred in *Freeman.* That is, the court in *Freeman* did not hold that the affirmative defense of res judicata could be asserted for the first time in a motion for summary judgment. Instead, the supreme court found that the lower court had improperly construed the Civ.R. 12(B)(6) motion as a motion for summary judgment and improperly relied on inadmissible summary judgment evidence. The supreme court then held that res judicata may not be raised in a Civ.R. 12(B) motion to dismiss. Thus, to the extent that the Ohio Supreme Court indicated its agreement with the Third's District comment about asserting res judicata in a summary judgment motion, such discussion was irrelevant to the holding in *Freeman* and we consider it dicta.

{¶ 51} Regardless, in *Johnson*, the Third District *did not* hold that res judicata may be asserted for the first time in a motion for summary judgment. For the proposition that res judicata could be raised in a motion for summary judgment, the court cited a law

treatise that observed that prior to the Ohio Rules of Civil Procedure, courts "permitted the disposition of actions involving . . . res judicata by summary judgment." *Johnson*, 14 Ohio App.3d at 414. The Third District did not address whether such a practice survived the adoption of the Rules of Civil Procedure but stated it would *assume* that "this [meaning the pre-Civil Rules statement of law] still applies" and went on to address whether the affirmative defense had been specifically raised by the motion for summary judgment in that case. *Id*. The Third District went on to find that the summary judgment motion filed in *had not specifically* raised res judicata, but even if it had, there was no evidentiary basis upon which to issue a finding as to the applicability of res judicata. *Id*. at 414-415. Therefore, the court in *Johnson* was not required to resolve—and did not resolve—the question of whether res judicata could be raised for the first time in a post-Civil Rules motion for summary judgment.

{¶ 52} On the precise issue of whether res judicata is waived if not asserted in a responsive pleading and raised for the first time in a summary judgment motion, we find instructive and persuasive the analysis of the Ninth District Court of appeals in *Nationstar Mtge., L.L.C v. Young*, 2016-Ohio-8287 (9th Dist.). In that case, the Youngs filed two answers, neither of which expressly raised res judicata as an affirmative defense. *Id*. at ¶ 16. The Youngs later asserted the defense of res judicata in their motion for summary judgment. *Id*. The Ninth District analyzed *Freeman* and found that its citation to *Johnson* did not mean that res judicata could be raised for the first time in a summary judgment motion. Instead, the court concluded that res judicata can be raised in a summary judgment motion only if it is (1) first raised in a responsive pleading, or (2) by amending a previously filed responsive pleading to include it as an affirmative defense. *Id*. at ¶ 18. The court stated, "We are not convinced . . . that the [Ohio Supreme Court] intended its

- 14 -

citation to *Johnson v. Linder* to resolve the issue of whether affirmative defenses are preserved if raised for the first time in a motion for summary judgment." *Id*.

{¶ 53} The Ninth District further found no support for the contention that *Jim's* favorable citation of *Freeman* signaled support for the contention that an affirmative defense not raised in a pleading can nevertheless be raised for the first time in summary judgment. *Id*. at ¶ 19. The court noted that *Jim's* was devoid of any discussion regarding summary judgment motions as proper vehicles for the assertion of res judicata or other affirmative defense. The court also noted that *Jim's* contained no citation to *Johnson*. *Id*.

{¶ 54} Finally, the Ninth District noted that when the Third District assumed (without deciding) that res judicata could be raised for the first time in a motion for summary judgment, there was "limited support" for this assumption. *Id*. at ¶ 20. The Ninth District noted that while the Third District in *Johnson* cited the Anderson's treatise as support for its assumption, a more recent version of the Anderson's treatise indicated that "The better practice is for the affirmative defense of res judicata to be raised by answer and then by summary judgment motion, rather than by a motion to dismiss for failure to state a claim upon which relief can be granted." *Id*. citing McCormac and Solimine, *Anderson's Ohio Civil Rules Practice*, Answers and Replies, Section 7.34, at 7-19 (2010).

{¶ 55} In sum, we find the analysis of the Ninth District in *Nationstar* persuasive and adopt the same position in this district.

{¶ 56} Defendants cite *E.B.P., Inc. v. 623 W. St. Clair Ave., L.L.C.*, 2010-Ohio-4005 (8th Dist.) and *Internatl. EPDM Rubber Roofing Sys., Inc. v. GRE Ins. Group*, 2001 WL 477251 (6th Dist. May 4, 2001), in support of the contention that res judicata is not waived if raised for the first time in a motion for summary judgment.

{¶ 57} *E.B.P.* involved the same situation presented here. That is, a party asserted res judicata for the first time in a motion for summary judgment and had not raised the

defense in its responsive pleading. *Id*. at ¶ 14, 18, 20, 29. In finding that res judicata could be asserted for the first time in a motion for summary judgment, the Eighth District analyzed *Jim's* and *Freeman*. *Id*. at ¶ 22-33. The court found *Jim's* factually distinguishable because the case did not involve a motion for summary judgment, and therefore did not stand for the proposition that res judicata may not be raised for the first time in a motion for summary judgment. *Id*. at ¶ 33. In finding that res judicata could be raised for the first time in a motion for summary judgment, the Eighth District primarily relied on *Freeman's* tacit approval of the Third District's statement in *Johnson* that res judicata can be raised in summary judgment proceedings. *Id*. at ¶ 26-29.

**{¶ 58}** In *Internatl. EPDM*, the Sixth District Court of Appeals applied the same reasoning later adopted in *E.B.P.* and held that the statement in *Jim's* that affirmative defenses are waived if not asserted in a responsive pleading had no effect on the Ohio Supreme Court's decision in *Freeman*, which it found supported the position that res judicata may be asserted for the first time in a motion for summary judgment. *Id*. at *4-5.

**{¶ 59}** The problem with both *E.B.P.* and *Internatl. EPDM* is that both are premised on the fallacy that *Freeman* stands for the proposition that res judicata may be asserted for the first time in a motion for summary judgment. But as set forth in our analysis above, *Freeman* neither concerned the assertion of res judicata in a motion for summary judgment nor addressed the waiver effect of failing to assert res judicata in a responsive pleading in the first instance.

**{¶ 60}** For the foregoing reasons, we conclude that the trial court erred by granting summary judgment in favor of the Defendants on the basis of res judicata. Defendants did not expressly assert res judicata as an affirmative defense, did not amend their answer to expressly raise the defense, and instead raised it for the first time in their motion for

summary judgment. The Defendants therefore waived the defense. We sustain Plaintiffs' first assignment of error.

## B. Genuine Issues of Fact and Plaintiffs' Claims

{¶ 61} Plaintiffs' second assignment of error states:

THE TRIAL COURT ERRED IN DETERMINING THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT.

{¶ 62} In its decision, the trial court found as follows concerning Plaintiffs' fraud, undue influence, and IIEI claims:

Also pending are claims of fraud, undue influence, duress, and interference with expectancy of inheritance. No actual facts constituting fraud are plead in Plaintiffs' complaint. When questioned in their respective depositions, not one Plaintiff could articulate any facts at all concerning these claims. Each Plaintiff was asked to give an example of facts that in any way established their claims. Not one Plaintiff could do so.

{¶ 63} Plaintiffs argue that the court's analysis was in error, and that they in fact submitted evidence demonstrating genuine issues of material fact in support of their fraud, undue influence, and IIEI claims.

## 1. Applicable Law

### a. Fraud

{¶ 64} The elements of fraud are (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to its truth or falsity that knowledge may be inferred, (4) with the intent of misleading another to rely on it; (5) justifiable reliance upon the representation or concealment; and (6) resulting injury proximately caused by the reliance. *Adena at Miami Bluffs Condominium Owners' Assn., Inc. v. R. Hugh Woodward*, 2021-Ohio-3872, ¶ 32 (12th Dist.)

{¶ 65} Plaintiffs contend that they provided the trial court with "ample evidence" that the Defendants (1) fraudulently misrepresented the value of the Farm and falsely claimed that it was "not making money" in order to induce Gray to sell it to them for $600,000; (2) falsely claimed that they were not able to obtain a loan to buy the Farm and therefore induced Gray to "simply sign [over]" the Farm to them; (3) falsely claimed that they would care for Gray when they had no intention to do so, thereby allowing them to "take over" her financial affairs.

{¶ 66} Plaintiffs state that they provided the trial court with "ample" evidence, yet their appellate brief, while summarizing this evidence as set forth above, provides no citation to the record indicating where this "ample evidence" of purported false representations is contained in the record. As the appellants, Plaintiffs bear the burden of affirmatively demonstrating error on appeal and substantiating their arguments in support thereof. *Ostigny v. Brubaker*, 2024-Ohio-384, ¶ 38 (12th Dist.). It is not an appellate court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *Lebanon v. Ballinger*, 2015-Ohio-3522, ¶ 27 (12th Dist.). Nor is it the duty of an appellate court to search the record for evidence to support an appellant's argument as to alleged error. *Hellmuth v. Stephens*, 2023-Ohio-4592, ¶ 23 (12th Dist.).

{¶ 67} Regardless, we initially note that the Plaintiffs' complaint contains only the most threadbare accusations of fraud. Civ.R. 9(B) requires "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The count of fraud merely alleges that Defendants made "false statements" without identifying any particular statements. We agree with the trial court's conclusion that the complaint failed to plead fraud with particularity.

{¶ 68} Upon our review of the record, we can find no record support for any false statements by Defendants in which Defendants misrepresented the value of the Farm to

Gray, or any false statements by Defendants to Gray that the Farm was "not making money." There is also no record support—nor do the Defendants cite any record support—for the allegation that the Defendants made a false promise to care for Gray when they had no intention of doing so. At most, any testimony that touched on these subjects established that the Plaintiffs had no knowledge of any false statements but instead, as their only explanation for Gray's actions, *speculated* that the Defendants must have made some false statements to Gray. But "[m]ere speculation is insufficient to create a genuine issue of material fact to avoid summary judgment." *Fontain v. H&R Cincy Properties, L.L.C.*, 2022-Ohio-1000, ¶ 67 (12th Dist.).

{¶ 69} With regard to the alleged false statement about an inability to obtain a loan, Plaintiff Julie testified that Gray told her that the Defendants were not able to get a loan to satisfy the Land Contract, and that Gray was scared and did not want Daniel to worry when she passed. Likewise, Plaintiff James testified that Gray told him that Defendant Daniel stated he was afraid that he would lose the Farm or that his siblings would take it from him. Assuming that Defendant Daniel conveyed to Gray his fear about his ability to obtain a loan or relayed a fear about losing the Farm, Plaintiffs do not articulate how this constitutes a false statement. The Defendants may well have believed that they may have trouble obtaining a loan. Plaintiffs produced no evidence that Defendants knew that they could obtain a loan and instead falsely represented to Gray that they could not.

{¶ 70} As such, we find no error in the trial court's determination that Defendants were entitled to summary judgment on Plaintiffs' fraud claims.

### b. Undue Influence

{¶ 71} The elements of undue influence are: "(1) a susceptible testator, (2) another's opportunity to exert influence on the testator, (3) the fact of improper influence exerted or attempted, and (4) a result showing the effect of such influence." *Estate of*

*Everhart v. Everhart*, 2014-Ohio-2476, ¶ 36 (12th Dist.) Because Plaintiffs were attempting to use the claim of undue influence to set aside a deed, Plaintiffs' burden of proof is clear and convincing evidence. *Id.* at ¶ 35; *Lakes v. Ryan*, 2003-Ohio-504, ¶ 18 (12th Dist.).

{¶ 72} Upon review, we find no facts demonstrating a genuine issue of fact as to whether the Defendants exerted or attempted to exert improper influence over Gray in conjunction with the transfer of the Farm to the Defendants. Although Plaintiffs again claim to have "ample" evidence supporting the improper exertion of influence, they have not cited the record in support of such evidence. No Plaintiff testified to being aware of any specific circumstances or conversations wherein improper influence was exerted by the Defendants in order to ensure that the Farm was deeded to them.

{¶ 73} As to the "susceptible testator" element, Plaintiffs argue that the trial court erred in only considering Defendants' evidence (from Gray's physician) that she was not and could not have been suffering from dementia at the time of these transactions. They argue that the court disregarded Plaintiffs' expert, who opined that Gray was suffering from dementia. This difference of opinion as to whether Gray suffered dementia did create a factual dispute that in other circumstances would have been inappropriate for resolution in summary judgment. However, this factual dispute was not a genuine issue of *material* fact in the context of this case. *See* Civ.R. 56(C) (summary judgment merited when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"). Plaintiffs' cause of action did not allege that Gray lacked the capacity to convey the Farm to Defendants, but instead that the conveyance was the product of undue influence asserted by one or more Defendants. Whether Gray was suffering from dementia is relevant to whether she was susceptible to being unduly influenced, but it does not relate to whether the Defendants actually exerted undue

- 20 -

influence. As discussed above, the Plaintiffs submitted no summary judgment evidence that Defendants engaged in acts or statements that would constitute their exertion of undue influence over Gray.

{¶ 74} We find no error in the trial court's determination that Defendants were entitled to summary judgment on Plaintiffs' fraud claims.

### c. Intentional Interference with Expectancy of an Inheritance

{¶ 75} The elements of the claim of IIEI are:

> "'(1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.'"

*Treadway v. Free Pentecostal Pater Ave Church of God, Inc.*, 2008-Ohio-1663, ¶ 22, quoting *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88 (1993).

{¶ 76} Initially, we note that all of the Plaintiffs testified either that they had *no* expectancy of an inheritance from Gray or that they expected that Gray's estate would be divided equally. In fact, Gray's will divided her estate equally, and so the Plaintiffs expectation was consistent with what actually occurred. Regardless, we understand that Plaintiffs are alleging tortious acts which caused the Farm to be transferred outside of Gray's estate, thereby depriving them of their equal share of the Farm upon Gray's death.

{¶ 77} For the IIEI claim to survive summary judgment, Plaintiffs were required to point to genuine issues of fact as to whether that Defendants engaged in acts of fraud, duress, or undue influence in order to intentionally interfere with their inheritance. But as set forth previously, Plaintiffs lacked any summary judgment evidence indicating that Defendants engaged in acts of fraud or misrepresentation, subjected Gray to duress, or

attempted to unduly influence Gray. At best, Plaintiffs could only speculate as to what conversations occurred between Defendants and Gray that may have resulted in the transfer of the Farm. But, again, "[m]ere speculation is insufficient to create a genuine issue of material fact to avoid summary judgment." *Fontain*, 2022-Ohio-1000 at ¶ 67 (12th Dist.). As such, the trial court did not err in granting summary judgment in favor of Defendants on this final claim.

{¶ 78} We overrule Plaintiffs' second assignment of error.

### III. Conclusion

{¶ 79} The trial court erred by concluding that Defendants did not waive the affirmative defense of res judicata by failing to raise it in their pleadings and instead raising it for the first time in their motion for summary judgment. Even though we have sustained Plaintiffs' first assignment of error, the decision to grant summary judgment in favor of Defendants does not constitute reversible error because Plaintiffs failed to demonstrate genuine issues of fact for trial on their claims of fraud, undue influence, and IIEI.

{¶ 80} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

### J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Brown County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellant and 50% to appellee.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robert A. Hendrickson, Judge*

*/s/ Mike Powell, Judge*